ROBERTS, J.
Appellant, mother of nine-year-old Lolita Huitt, appeals from the order of the circuit court terminating her parental rights and thus freeing the child for adoption. We review the decision of the trial court de novo on the record. ORS 419.561(4). State ex rel Juv. Dept. v. Zinzer, 20 Or App 688, 533 P2d 355 (1975).
Termination of parental rights is provided for in ORS 419.523.[1]
The petition filed in this case sought termination on two grounds.
First, it was alleged that "Mary Barkley is unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of Mary Barkley is improbable in the foreseeable future due to the conduct or conditions not likely to change. if: *
Second, the petition alleged that "Mary Barkley has failed or neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of the child since June 14, 1969, * * *”
*[834] The question on appeal is whether the evidence predominates in favor of termination under the statutory guidelines.
Appellant claims that hearsay evidence was admitted by the trial court in the form of the Children’s Services Division case file. The file was admitted under the Business Records Exception to the hearsay rule as discussed in State ex rel Juv. Dept. v. Prince, 20 Or App 213, 530 P2d 1251 (1975). In State ex rel Juv. Dept. v. Thomas T., 30 Or App 385, 567 P2d 135 (1977), we explained that such records are not admissible except those portions the official making the entry had personal knowledge of the facts noted or a duty of verification as to the information recorded.
The respondent admits that some portions of the file should not have been admitted into evidence under the rule stated above. Respondent argues that even without any of the evidence in the file, statutory requirements for termination were shown. Here, assuming arguendo that a proper objection was made, we reach our decision without reference to the Children’s Services Division file.
*[835] The child in this case has been under the jurisdiction of the Children’s Services Division for approximately seven years. For almost all of those years the child has been in one foster home. It is the desire of the foster parents to adopt the child.
Regarding the first allegation of the capacity of the mother and the integration of the child into the mother’s home certain facts are not disputed.
Appellant is the mother of five children by her first husband: four in their teens or older and the subject child. After the termination of her first marriage appellant married Melvin Barkley and gave birth to a daughter. Before the marriage to Mr. Barkley, appellant-mother had consented to foster care for her five children and had arranged visitation with the children.
When the marriage to Mr. Barkley became unstable and mother had no permanent living situation, regular visitations with the five children were terminated. Upon advice of her attorney, mother moved to Portland from Klamath Falls in December, 1972.
At the request of Children’s Services Division, a caseworker in Portland visited in appellant’s home a number of times. The caseworker reported that the home was clean, the daughter in her care was clean and talkative, and that there was good interrelations between mother and child.
After this, differences between appellant and Children’s Services Division developed as to the handling of the subject child. Mother believed the child should be sent to Portland and placed in her home and supervised by the Children’s Services Division. Children’s Services Division maintained the mother had not submitted a plan for integration of the child into her home. There was contradictory testimony as to the mother’s capacity to adequately provide for a second child in the household, which need not be discussed here. It is sufficient to say as we did in Starin and *[836] Starin, 29 Or App 557, 564 P2d 748, Sup Ct review denied (1977), that:
"* * * Because of its opportunity to observe the witnesses, the trial court is in a superior position to make a wise resolution. While we review de novo, substantial weight is afforded the trial court on factual issues of the nature presented here.” Starin and Starin supra at 559. See McCoy and McCoy, 28 Or App 919, 562 P2d 207, 29 Or App 287, 563 P2d 738 (1977).
We next consider the second allegation of the petition.
During the first few years of foster care there was more of less regular visitation between mother and daughter. During the last few years visits have become sporadic and at the time the petition was filed the mother had not requested a visit in over a year, and in the four years prior to the time the petition was filed the mother had seen the child only four times and corresponded only twice.
Mother claims that the reason for the lack of visitation was that Children’s Services Division was not helpful in arranging the visits or providing funds for transportation from Portland to Klamath Falls. The evidence presented by Children’s Services Division showed that at about the same time mother moved to Portland she received $12,000 in Klamath tribal disbursements from the federal government.
Mother further contends her lack of visits were due to an injured ankle and that she had been emotionally upset over the death of her parents. A similar argument was made in State ex rel Juv. Dept. v. Shelton, 29 Or App 211, 562 P2d 1225 (1977). There we said:
"* * * However, even if all these reasons actually did exist, they would not have prevented the mother from making some attempt — whether through her welfare worker, Children’s Services Division, or even just by letter — to communicate with her son or to inquire if his needs were being met. The failure of the mother to do so, *[837] and her uninterrupted neglect of the needs of her son fully support termination.” 29 Or App at 214-15.
Affirmed.

"(1) The parental rights of the parents of a child within the jurisdiction of the juvenile court as provided in subsection (1) of ORS 419.476 may be terminated as provided in this section and ORS 419.525. * * *
"(2) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:
"(a) Emotional illness, mental illness or mental deficiency of the parent of such duration as to render it impossible to care for the child for extended periods of time.
******
"(d) Physical neglect of the child.
"(e) Lack of effort of the parent to adjust his circumstances, conduct, or conditions to make the return of the child possible or failure *[834] of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected.”
"(3) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents have failed or neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of the child for one year prior to the filing of a petition. In determining such failure or neglect, the court shall consider but is not limited to one or more of the following:
"(a) Failure to provide care or pay a reasonable portion of substitute physical care and maintenance if custody is lodged with others.
"(b) Failure to maintain regular visitation or other contact with the child which was designed and implemented in a plan to reunite the child with the parent.
"(c) Failure to contact or communicate with the child or with the custodian of the child. In making this determination, the court may disregard incidental visitations, communications or contributions.” ORS 419.523(1X2X3).