In re The Matter of the TERMINATION OF THE PARENT–CHILD RELATIONSHIP of E.T. and B.T.

No. 02S03–0308–JV–367.

Supreme Court of Indiana.

May 20, 2004.

Richard L. Williams, Fort Wayne, IN, Attorney for Mother, Caroline Taylor.

Robert J. Bishop, Fort Wayne, IN, Attorney for Father, Leroy Taylor.

Stephen P. Griebel, Van Gilder & Trzynka, P.C., Fort Wayne, IN, Attorney for Appellee.

RUCKER, Justice.

We conclude that reports compiled by a social services agency describing home visits and supervised visitations do not qualify as business records and thus are not admissible as an exception to the hearsay rule.

### Facts

The Allen County Office of Family and Children ("OFC") removed E.T. and B.T. from their parents' care in August 1999 after the children were found wandering from their home for the second time in a month. After unsuccessfully working with the parents toward reunification, OFC filed a petition for involuntary termination of parental rights in late 2000 or early 2001.

The trial court's original dispositional decree required parents to enroll in a program offered by SCAN, Inc. Although not included in the record before us, the public record shows that SCAN, Inc. is a non-

profit corporation whose mission is to "prevent child abuse and neglect through direct service, education, coordination and advocacy." *See* http://www.scanfw.org/whoweare.html. To accomplish its mission SCAN, Inc. offers a variety of services, which it identifies as: Prevention Through Education (PTE); Parenting Classes; Specialty Parenting Classes; Intensive Intervention Team (IIT); Parents and Partners; Supervised Visitation; and Healthy Families. *See* http://www.scanfw.org/page/historyprogramlisting.html.

The specific program to which parents were directed to enroll was SCAN, Inc.'s Parents and Partners program. Among other things the program included home visits and supervised visitation. At the termination hearing, over the parents' objection, reports from these supervised visits were introduced into evidence. The trial court ultimately terminated the parents' parental rights. On review a divided panel of the Court of Appeals affirmed, determining (1) the reports of SCAN, Inc. were admissible under the business records exception to the hearsay rule, (2) admission of the reports did not violate the parents' rights under the Confrontation Clause of the United States Constitution, and (3) any error in admitting the reports was harmless. *In re E.T.*, 787 N.E.2d 483, 486–87 (Ind.Ct.App.2003). In their Petition To Transfer the parents do not challenge the Court of Appeals' harmless error determination. Therefore on this issue we summarily affirm the Court of Appeals' opinion. However we grant transfer and hold that the reports at issue in this case do not qualify as business records within the meaning of the business records exception to the hearsay rule.

### Historical Background

Every second-year law student and perhaps first-year law student as well, depending on the law school curriculum, can recite the general definition of hearsay: "an out of court assertion offered in court to prove the truth of the matter asserted." Also well known is the corollary that absent an exception to the rule, hearsay is inadmissible as evidence. Not so universally recited or well known are the numerous exceptions to the rule. Indeed precisely because of its numerous exceptions, some scholars have argued in favor of abolishing the rule altogether. *See, e.g.,* Paul S. Milich, *Hearsay Antinomies: The Case for Abolishing the Rule and Starting Over,* 71 Or. L.Rev. 723 (1992); Eleanor Swift, *Abolishing the Hearsay Rule,* 75 Cal. L.Rev. 495 (1987). In any event, the exceptions to the rule have been generally based upon some combination of the unavailability of the declarant, the reliability of the declaration, or the presumed inefficiency of any possible cross-examination. *See generally* 5 John Henry Wigmore, *Evidence* §§ 1420–27 (Chadbourn rev.1974); 2 John W. Strong, *McCormick on Evidence* § 253 (5th ed.1999).

An outgrowth of the English common law "shop book" rule, the business records exception is one of the oldest exceptions to the rule against the admissibility of hearsay. In England, the custom emerged of courts receiving the shop books of businessmen as evidence of goods sold or services rendered. The purpose was to circumvent the prohibition against a party appearing as its own witness. By 1832, the "shop book" rule was firmly grounded in English common law, and its scope included all entries made in the ordinary course of business. *McCormick on Evidence* 285.

Today, either by statute, court rule, or both, every American jurisdiction has adopted rules governing the admission of business records. *See* 5 Wigmore, *Evidence* § 1561a, at n. 6 (Supp.1991). Like

Indiana, most state business records exceptions closely track Rule 803(6) of the Federal Rules of Evidence.[1] *See* David F. Binder, *Hearsay Handbook* § 16:2 (4th ed.2001). Indiana's rule provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness.... A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Ind. Evidence Rule 803(6). Prior to the 1994 codification of Rule 803(6), Indiana common law provided in general terms that in order to come within the business records exception to the hearsay rule the following requirements had to be met: (1) the records offered must have been the original entries; (2) the records must have been made in the regular course of business at or near the time of the event recorded; (3) the facts must have been within the first-hand knowledge of someone whose business duty it was to observe and report the facts; and (4) the witness who had knowledge of the facts must be unavailable. *Smith v. State*, 455 N.E.2d 606, 607 (Ind.1983); *Wells v. State*, 254 Ind. 608, 261 N.E.2d 865, 870 (1970). With few exceptions, Evidence Rule 803(6) is generally consistent with longstanding Indiana precedent on the admissibility of business records.[2]

Like the common law "shop book" rule, the business records exception to the hearsay rule is "based on the fact that the circumstances of preparation assure the accuracy and reliability of the entries." *Wells*, 261 N.E.2d at 870. As we have observed more recently, the reliability of business records stems in part from the fact that "the organization depends on them to operate, from the sense that they are subject to review, audit, or internal checks, [and] from the precision engen-

1. The federal rule provides:
   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
   . . . .
   (6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

2. For example, there is no longer an "original record" requirement; nor is there a requirement that the witness be "unavailable." In addition, unlike the common law rule, Evidence Rule 803(6) permits the use of an affidavit in laying the foundation for business records.

dered by the repetition...." *Stahl v. State*, 686 N.E.2d 89, 92 (Ind.1997); *see also* Advisory Committee's Note to Fed. R. of Evid. 803(6) (observing that business records are made reliable by "systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation").

In essence, the basis for the business records exception is that reliability is assured because the maker of the record relies on the record in the ordinary course of business activities. The "regular course" of business "must find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business." *Palmer v. Hoffman*, 318 U.S. 109, 115, 63 S.Ct. 477, 87 L.Ed. 645 (1943). Thus where a company does not rely upon certain records for the performance of its functions those records are not business records within the meaning of the exception to the hearsay rule. *See, e.g., id.* at 114, 63 S.Ct. 477 (noting that accident reports prepared by railroad were not business records because they were not prepared "for the systematic conduct of the enterprise as a railroad business;" rather, "[t]heir primary utility is in litigating, not in railroading"). It is not enough to qualify under the business records exception to show that the records are made regularly; rather, the court must also look to "the character of the records and their earmarks of reliability acquired from their source and origin and the nature of their compilation." *Id.* (citation omitted).

### Discussion and Decision

The State's exhibits 20 and 21 are reports of home visits and supervised visitations. The State offered them into evidence during the testimony of Karen Emery, the supervisor of SCAN, Inc.'s Parents and Partners Program. According to Emery, the reports were compiled by staff members based upon their firsthand observations and were made in the regular course of business.

We first observe that not all of the information contained in the reports was the result of first-hand observations. Rather, the reports also contain third-party statements concerning events not observed by the SCAN, Inc. staff members that compiled the reports. For instance, "The receptionist stated that [Father] was in the waiting area and stated he didn't have to sit in 'these f——in chairs' and stated he was in prison. The receptionist stated [Father] was loud and angry while mumbling to himself." Ex. 21. 3/7/02. "The foster parent reported ... that since [E.T.] heard his father state on a previous visit that he did not wipe himself after [going to the bathroom] that they are having problems with [E.T] wiping himself." Ex. 21. 10/11/01. "It was reported from the aunt that she offered the client 2 love seats and [Father] refused them." Ex. 21. 10/4/01. We have no doubt that the SCAN, Inc. staff members compiling the reports had a duty to do so and did so on a regular basis. However that does not automatically transform the reports into business records within the meaning of the exception to the hearsay rule. As one court explained:

[T]he mere fact that the recording of third-party statements by the caseworker might be routine, imports no guarantee of the truth, or even reliability, of those statements. To construe these statements as admissible simply because the caseworker is under a business duty to record would be to open the floodgates for the introduction of random, irresponsible material beyond the reach

of the usual tests for accuracy—cross-examination and impeachment of the declarant.

*Matter of Leon R.R.*, 48 N.Y.2d 117, 123, 421 N.Y.S.2d 863, 397 N.E.2d 374 (N.Y. 1979) (termination of parental rights proceeding in which court held portions of childs case file inadmissible because of third-party statements); *accord Matter of Huitt*, 31 Or.App. 831, 571 P.2d 571, 573 (1977) (holding Childrens Services Division case file inadmissible under business records exception "except those portions the official making the entry had personal knowledge of").

Just as important, the reports also contain conclusory lay opinions. Examples include: "[Father] appears to undermine all efforts of [Mother] to gain control of the children." Ex. 20. 8/3/01. "[The Taylors] remain inconsistent in dealing with the children and appear unwilling to take suggestions from the FSC." Ex. 20. 1/4/02. These supervised visit reports include a section for "Observations" and another for "Impressions." Entries under the section for "Impressions" include: "The FSC feels the clients love their children but is concerned that they may not be able to care for them on a long term basis." Ex. 21. 3/14/01. "FSC felt as though the parents had a very difficult time redirecting the children and keeping them under control." Ex. 21. 11/15/01.

Although Rule 803(6) accommodates the inclusion of "opinions" in business records our courts have long recognized, at least in the context of medical or hospital records, that the expertise of the opinion giver must be established. *See Fendley v. Ford*, 458 N.E.2d 1167, 1171 n. 3 (Ind.Ct.App.1984) ("Expressions of opinion within medical or hospital records historically have not been admissible under the business records exception because their accuracy cannot be evaluated without the safeguard of cross-examination of the person offering the opinion."); *accord Brooks v. Friedman*, 769 N.E.2d 696, 701 (Ind.Ct.App.2002), *trans. denied; Schaefer v. State*, 750 N.E.2d 787, 793 (Ind.Ct.App. 2001); *Schloot v. Guinevere Real Estate Corp.*, 697 N.E.2d 1273, 1277 (Ind.Ct.App. 1998). We believe no less is required when the decision of the trial court to terminate "one of the most valued relationships in our culture," *Neal v. Dekalb County Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind.2003), could very well rest on the opinion of a person who has never been placed under oath and whose expertise and opinion have never been subjected to the crucible of cross-examination.[3]

Further, it does not appear to us that SCAN, Inc. depends on the reports to operate its business. Rather, forwarded to OFC by SCAN, Inc. on a monthly basis, the reports appear to be compiled for the

---

**3.** This view is also consistent with that of other jurisdictions. *See, e.g., Prater v. Cabinet for Human Res.*, 954 S.W.2d 954, 958 (Ky. 1997) (parental rights termination proceeding in which court held that "recorded opinions and conclusions of social workers are not admissible, because the persons offering those opinions are insufficiently qualified to render expert opinions"); *In re Child of Simon*, 662 N.W.2d 155, 161 (Minn.Ct.App.2003) (in parental rights termination proceeding, court held that "a business record containing an opinion on an ultimate issue is admissible only if the witness offering the opinion is available [for] cross-examination"); *In re Wildoner*, 268 Pa.Super. 271, 407 A.2d 1351, 1354 (1979) (finding in parental rights termination proceeding "nothing inherently reliable in reports on the condition of a persons household prepared by a social agency [because such] reports invariably contain certain subjective evaluations of the person preparing the report and, as such, should not be admitted into evidence [without] cross-examination").

sole benefit of OFC. In fact the only clients of SCAN, Inc.'s Parents and Partners program are those referred by OFC. It may be the case that the records serve to advance SCAN, Inc.'s mission to. "prevent child abuse and neglect." However nothing· in the record supports the view that these reports are prepared for the systematic conduct of SCAN, Inc. as a non-profit corporation. In fact, a survey of Indiana cases reveals that nothing similar to the reports of SCAN, Inc. has ever been included by our courts within the business records exception.[4] Unlike financial statements, inventory records, or other administrative or operational documents traditionally allowed under the business records exception, the SCAN, Inc. reports appear to be substantive end products of a service offered by SCAN, Inc. solely for an external government agency, to become the permanent property of that agency. In sum, the reports did. not qualify as business records. They were inadmissible as hearsay and should not. have been introduced over the parents' timely objection. The trial court thus erred by allowing the reports into evidence.

However, not all trial court error is reversible. *See* Ind. Trial Rule 61. The

---

4. Cases from the Indiana Supreme Court and Court of Appeals reveal that evidence held as admissible include: **arrest records and arrest reports, including fingerprint cards** (*Boarman v. State,* 509 N.E.2d 177 (Ind.1987); *Lyons v. State,* 506 N.E.2d 813 (Ind.1987); *Prentice v. State,* 474 N.E.2d 496 (Ind.1985); *Landers v. State,* 464 N.E.2d 912 (Ind.1984); *McBrady v. State,* 459 N.E.2d 719 (Ind.1984); *Belcher v. State,* 453 N.E.2d 214 .(Ind.1983); *Pitts v. State,* 439 N.E.2d 1140 (Ind.1982); *Underhill v. State,* 428 N.E.2d 759 (Ind.1981); *Jennings v. State,* 723 N.E.2d 970 (Ind.Ct.App.2000); *Payne v. State,* 658 N.E.2d 635 (Ind.Ct.App. 1995); *Knuckles v. State,* 549 N.E.2d 85 (Ind. Ct.App.1990)); **ATM photos and audit sheets** (*Stark v. State,* 489 N.E.2d 43 (Ind.1986)); **autopsy reports** (*Thompson v. State,* 270 Ind. 442, 386 N.E.2d 682 (1979)); **blood alcohol test results** (*Reeves v. Boyd & Sons,* 654 N.E.2d 864 (Ind.Ct.App.1995)); **blood and DNA test results** (*Fowler v. Napier,* 663 N.E.2d 1197 (Ind.Ct.App.1996); *Humbert v. Smith,* 655 N.E.2d 602 (Ind.Ct.App.1995); *Burp v. State,* 612 N.E.2d. 169 (Ind.Ct.App. 1993)); **certifications of mailing** (*Collins v. State,* 567 N.E.2d 798 (Ind.1991)); **check vouchers and deposit slips** (*McDonough v. State,* 242 Ind. 376, 175 N.E.2d 418 (1961); *Cobb v. State,* 585 N.E.2d 40 (Ind.Ct.App. 1992)); **commitment orders** (*Funk v. State,* 427 N.E.2d 1081 (Ind.1981)); **financial statements** (*Williams v. Hittle,* 629 N.E.2d 944 (Ind.Ct.App.1994)); **insurance policies** (*Willoughby v. State,* 660 N.E.2d 570 (Ind.1996)); **inventory records** (*Shneider v. State,* 220 Ind. 28, 40 N.E.2d 322 (1942)); **job logs tracking performance** (*Brant Constr. Co. v. Lumen Constr.,* 515 N.E.2d 868 (Ind.Ct.App.1987)); **log sheets of police evidence** (*Perry v. State,* 541 N.E.2d 913 (Ind.1989); *Reynolds/Herr v. State,* 582 N.E.2d 833. (Ind.Ct.App.1991)); **marriage licenses** (*Smith v. State,* 455 N.E.2d 346 (Ind.1983)); **medical reports** (*Brooks v. Friedman,* 769 N.E.2d 696 (Ind.Ct.App.2002); *Nash v. State,* 754 N.E.2d 1021 (Ind.Ct.App. 2001); *Schaefer v. State,* 750 N.E.2d 787 (Ind.Ct.App. 2001); *Schloot v. Guinevere Real Estate Corp.,* 697 N.E.2d 1273 (Ind.Ct.App.1998); *Carmichael v. Kroger Co.,* 654 N.E.2d 1188 (Ind.Ct. App.1995)); **motel reservation entries** (*Smith v. State,* 455 N.E.2d 606 (Ind.1983)); **motor vehicle registrations and driving records** (*Allen v. State,* 439 N.E.2d 615 (Ind.1982); *Dumes v. State,* 718 N.E.2d 1171 (Ind.Ct.App. 1999); *Ruby v. State,* 549 N.E.2d 379 (Ind.Ct. App.1990); *Chambers v. State,* 547 N.E.2d 301 (Ind.Ct.App.1989)); **pawn tickets** (*Darnell v. State,* 435 N.E.2d 250 (Ind.1982)); **police technician's reports on blood type** (*Clark v. State,* 436 N.E.2d 779 (Ind.1982)); **prison conduct records** (*Games v. State,* 743 N.E.2d 1132 (Ind.2001)); **records of telephone calls** (*Brandon v. State,* 272 Ind. 92, 396 N.E.2d 365 (1979); *Floyd v. Jay County Rural Elec. Membership Corp.,* 405 N.E.2d 630 (Ind.Ct. App.1980)); **school attendance records** (*J.L. v. State,@* 789 N.E.2d 961 (Ind.Ct.App.2003); *L.H. v. State,* 682 N.E.2d 795 (Ind.Ct.App. 1997)); **security agreements** (*Greco v. KMA Auto Exch., Inc.,* 765 N.E.2d 140 (Ind.Ct.App. 2002)); **time cards** (*Wiseman v. State,* 521 N.E.2d 942 (Ind.1988)); **working papers of audits** (*Brane v. Roth,* 590 N.E.2d 587 (Ind.Ct. App.1992)). .·

improper admission of evidence is harmless error when the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the judgment. *D.W.S. v. L.D.S.*, 654 N.E.2d 1170, 1173 (Ind.Ct.App.1995). The Court of Appeals in this case determined that the evidence to support the termination of the parents' parental rights was sufficient even absent the questioned documents. The parents make no claim to the contrary. Therefore, on this point we summarily affirm the Court of Appeals.

### Conclusion

Except as otherwise provided, we vacate the opinion of the Court of Appeals and affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., not participating.