Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2013, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
Indiana Dept. of Child Services
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF K.C., a/k/a R.L., and A.L., Minor Children, | ) ) ) ) | |
| S.L., Father, | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 49A02-1207-JT-585 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn E. Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause Nos. 49D09-1202-JT-7083, 49D09-1202-JT-7084

**April 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

S.L. ("Father") appeals the termination of his parent-child relationship with K.C.[1] and A.L. ("Children"). He raises two issues: whether the juvenile court erred in admitting hearsay statements over Father's objection, and whether there is sufficient evidence to support the termination. We affirm.

## FACTS AND PROCEDURAL HISTORY

Father, J.C. ("Mother"),[2] Children, and Mother's child, A.W., lived in Wisconsin. In March 2010, Mother took Children to Indiana without Father's knowledge or permission. Then, in May 2010, she reported Children as Children in Need of Services ("CHINS"), and they were placed in foster care.

At a January 4, 2012, CHINS pre-trial hearing, Father admitted a history of domestic violence with Mother that had caused coercive intervention for Children. At a subsequent dispositional hearing, the juvenile court ordered Father to, among other things, maintain a stable source of income adequate to support Children, obtain and maintain suitable housing, participate in counseling and parenting assessment and successfully complete all recommendations resulting from assessment, and complete a psychological evaluation. Father thereafter moved to Indiana to complete court-ordered services and preserve his parental rights. Father participated in supervised visits with Children.

During a permanency hearing on February 21, 2012, the Department of Child Services ("DCS") changed the permanency plan from reunification to termination of

---

[1] K.C. is also known as R.L.; however, both parties refer to the child as K.C.
[2] Mother is not a party to this appeal.

parental rights and adoption because Father was not completing the services successfully. It requested suspension of Father's supervised visitation until he showed progress with completing ongoing services.

In Indianapolis, Father did not complete homebased counseling due to a lack of regular contact with the counselor. Father's homebased therapist, Children's Court Appointed Special Advocate ("CASA"), and Family Case Manager ("FCM") claimed Father had stress and anger issues. Father completed a domestic violence assessment but did not complete the recommended domestic violence classes. Father labeled Mother the aggressor and him the victim in all domestic violence between them. Father contended the domestic violence services were for batterers, and he refused to complete them because he wanted to avoid that designation.

Just before the termination hearing, Father moved into a house unsuitable for children, but claimed he could fix it in six months to a year. He relied on disability benefits to pay his bills and, at the time of termination, faced eviction if rent was not paid in fifteen days. Father indicated he planned to provide for Children with food stamps.

On June 25, 2012, the juvenile court terminated Father's parental rights.

## DISCUSSION AND DECISION

We review termination of parental rights with great deference. *In re K. S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge the credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the trial court's unique position to assess the

3

evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied, cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and, second, whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the decision, we affirm. *In re L.S.*, 717 N.E.2d at 208.

1.      <u>Hearsay Objection</u>

We review decisions concerning admission of evidence for an abuse of discretion. *Walker v. Cuppett,* 808 N.E.2d 85, 92 (Ind. Ct. App. 2004). An abuse of discretion occurs if the trial court's decision was clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* A trial court also abuses its discretion if its decision is without reason or is based upon impermissible considerations. *Id.* Even if a trial court errs in a ruling on the admissibility of evidence, we will reverse only if the error is inconsistent with substantial justice. *Id.*

Hearsay is an out-of-court statement offered in a judicial proceeding to prove the truth of a matter asserted in the statement. Ind. Evidence Rule 801(c). During the termination trial on June 25, 2012, a DCS case manager testified Mother said Father

4

physically abused her. Father's hearsay objection was overruled because the court mistakenly thought Mother's statement was being offered against Mother, when it was, in fact, offered against Father. See Ind. Evid. R. 801(d)(2) ("A statement is not hearsay if: . . . [t]he statement is offered against a party and is (A) the party's own statement . . . .").

Nevertheless, any error in admitting that statement is not reversible because "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Evid. R. 103(a). Even if the case manager's testimony was inadmissible hearsay, there was independent evidence of domestic abuse in the form of certified exhibits in the underlying CHINS proceedings and Father's admissions of domestic violence. The CHINS Petition included Mother's allegations of Father's abuse, the juvenile court admitted and transcribed such allegations, and Father admitted several violent acts. Therefore, Father cannot demonstrate that a substantial right was violated. *See In re E.T.*, 808 N.E.2d 639, 646 (Ind. 2007) (improper admission of hearsay evidence ruled harmless because other circumstantial evidence was sufficient for termination of parental rights).

2.     Sufficiency of the Evidence

To terminate a parent-child relationship, DCS must allege and prove by clear and convincing evidence that there is a reasonable probability: "(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child." Ind. Code § 31-35-2-4(b)(2).

5

The juvenile court must determine a parent's fitness to care for the children at the time of the termination hearing to determine whether there is a reasonable probability the parent will not remedy the conditions that led to the children's removal. *In re A.B.,* 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). The juvenile court must evaluate the parent's habitual patterns of conduct to determine the possibility of future neglect or deprivation of the children. *Id.* These patterns include, but are not limited to, historical failure to provide support and lack of adequate housing and employment. *McBride v. Monroe County OFC*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

We consider a parent's unresponsiveness, uncooperativeness, and unwillingness to complete assigned services when determining sufficiency of evidence for termination of parent-child relationship, although it is not an element of termination proceedings. *In re L.S.*, 717 N.E.2d 204 at 210 ("pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change"); *In re E.E.,* 736 N.E.2d 791, 796 (Ind. Ct. App. 2000) (provision of services not element of termination statute). Therefore, to determine sufficiency we consider Father's failure to successfully complete services in conjunction with other unchanged factors.

DCS must establish a reasonable probability that Father's behavior will remain unchanged. *In re Kay L.*, 867 N.E.2d 236 (Ind. Ct. App. 2007). At the termination hearing, Father requested up to two years to make his current home suitable. In Wisconsin, Father had "many different residences where [he] had to keep moving." (Tr.

at 84.) In Indianapolis, he stayed with two different relatives before settling in his residence as of April 2012. Renovations and repairs were needed at the time of termination. He relied on $875 a month in disability, $475 of which was for rent. The disability payments did not cover phone, storage, and loan payments. He had no plan for a room or bedding for Children, was facing eviction if rent was not paid in fifteen days, and planned to use food stamps to provide food for Children if given custody.

In addition, Father claimed his cousins had robbed him and kept him captive at his current residence during April 2012. Father claimed they kept him hostage with BB guns and he did not call police because he feared the captors would kill him. Father did not contact service providers during the alleged captivity.

We agree that, based on these facts, there is a reasonable probability that Father's failure to provide adequate housing will not be remedied. This factor, in conjunction with Father's failure to complete services, is clear and convincing evidence of a reasonable probability that he will not remedy the conditions that resulted in Children being placed outside his care.[3] *See In re C.C.*, 788 N.E.2d 847, 854-55 (Ind. Ct. App. 2003) (father's lack of adequate housing in conjunction with failure to complete services established clear and convincing evidence of reasonable probability that conditions leading to children's removal would not be remedied), *trans. denied*.

---

[3] We need not address the question of a threat to the Children's well-being because only one prong under Ind. Code § 31-35-2-4(b)(2) must be satisfied to permit termination of parental rights. *See Prince v. Dep't of Child Servs.*, 861 N.E.2d 1223, 1229 n.2 (Ind. Ct. App. 2007) (State needs prove only one prong of test).

## CONCLUSION

Father cannot demonstrate he was prejudiced by the admission of the hearsay evidence at issue. There was clear and convincing evidence of a reasonable probability Father could not remedy the conditions that caused Children to be placed outside his care, and termination of his parental rights therefore was not error.

Affirmed.

ROBB, C.J., and PYLE, J., concur.