**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**THOMAS G. KROCHTA**
Vanderburgh County Public Defender
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINA D. PACE**
Deputy Attorneys General
Indianapolis, Indiana

**FILED**

Apr 28 2014, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: A.C. (Minor Child), and A.C.C. (Father), Appellant-Respondent, | ) ) ) ) ) | |
| vs. | ) ) | No. 82A04-1309-JT-496 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, Appellee-Petitioner. | ) ) ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett J. Niemeier, Judge
The Honorable Renee Allen Ferguson, Magistrate
Cause No. 82D01-1302-JT-8

**April 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

A.C.C. ("Father") appeals the court's order terminating his parental rights as to his daughter, A.C. ("Child").

We affirm.

**Issue**

Father raises one issue for our review, whether there was sufficient evidence to sustain the order terminating his parental rights.

**Facts and Procedural History**

Child was born on December 14, 2005, in Evansville, to Father and Mother.[1] Father and Mother lived together with Child in Evansville for approximately two years, after which Father and Mother separated; both remained in Evansville. Mother retained legal custody of Child, but Father provided regular care of Child in his home. Father acknowledged paternity, and a child support order was put into place.

During the following years, Father moved frequently. Sometime in 2011, Mother enrolled Child in kindergarten; after this point, Child would stay with Father on weekends. Sometime in November or December 2011, Mother picked up Child from Father's care and informed Father that she was moving with Child to Louisville, Kentucky. Father and other family members were concerned, but did not make substantial efforts to follow up on Child's status.

---

[1] Mother voluntarily relinquished parental rights to Child and is not a party to this appeal.

On January 31, 2012, Child had been placed by Mother into a third party's care; this individual had injured Child by inflicting second- and third-degree burns on Child's right hand. The Department of Child Services ("DCS") was contacted, and Child was removed and placed into DCS custody. DCS contacted Father, who indicated that he was not in a position to assume care of Child.

On March 27, 2012, despite Father's opposition, Child was determined to be a Child in Need of Services ("CHINS"). Due to a prior CHINS action in 1993, in which Father was involved but was not a named party, a no-contact order was entered against Father as to Child. Father had no subsequent contact with Child.

As a result of the CHINS determination, Father was ordered to comply with parent education services and to remain drug- and alcohol-free. On August 14, 2012, Father was determined to have consumed alcohol contrary to the trial court's orders in the CHINS action, was placed in contempt of court, and was incarcerated for ninety days. After this, Father participated in substance abuse counseling, as well as other DCS-provided services.

On February 5, 2013, DCS filed a petition to terminate Father's parental rights. An evidentiary hearing was conducted on July 12, 13, and 30, 2013. During the pendency of the hearing, on July 15, 2013, DCS filed an information for contempt against Father as a result of an incident during which a neighbor of Father was alleged to have committed a criminal act and after which the neighbor brought and concealed a firearm in Father's home.

On September 24, 2013, the court entered its order terminating Father's parental rights.

This appeal ensued.

**Discussion and Decision**

Father appeals the trial court's order terminating his parental rights. Our standard of review is highly deferential in cases concerning the termination of parental rights. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code Section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) That one (1) of the following is true:

    (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the

date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) That one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described in Section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court also must "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. Courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and

lack of adequate housing and employment. A.F. v. Marion Cnty. Office of Family & Children, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), trans. denied.

Appealing the trial court's decision terminating his parental rights, Father argues that DCS did not provide sufficient evidence to satisfy the requirements of subsections 31-35-2-4(b)(2)(B)(i) and (ii). See supra. This statute "is written in the disjunctive" so that only one of the requirements of subsection (B)—here, either that there is a reasonable probability the conditions necessitating a child's removal will not be remedied or that continuation of the parent-child relationship poses a threat to the child's well-being—need be proved by clear and convincing evidence. In re L.S., 717 N.E.2d at 209.

Upon review of the record, we conclude there was sufficient evidence that the continuation of a parent-child relationship with Father would pose a threat to Child. Prior to the CHINS petition in this case, Father had moved frequently, and Child often slept on a couch. While Father obtained stable housing since that time, he was renting a one-bedroom apartment. Father had limited income in the form of Social Security benefits and food stamps, and his existing needs left very little money for additional expenses. Erin Minnette, a DCS caseworker, testified that though Father had books and toys for children during a scheduled visit, a surprise visit one week later revealed that these items were no longer in the apartment.

Father does not have a driver's license or independent transportation, and is prohibited from obtaining a driver's license because his driving privileges have been suspended for life due to numerous adjudications for Driving While Intoxicated. Father's difficulties with

6

alcohol abuse continued during the CHINS proceedings. This abuse resulted in contempt and incarceration for ninety days and a court-ordered alcohol treatment program. Father also experienced several medical difficulties and hospitalizations during the pendency of the CHINS action, including two surgeries requiring one or more days of in-patient treatment. And in April 2013, during the pendency of the petition to terminate his parental rights, Father was discovered by police to have associated with a neighbor who brought and concealed in Father's apartment a firearm suspected by police to have been used in a shooting. Contempt proceedings with respect to this incident, and Father's associated alleged violation of the CHINS orders, were pending at the time of the hearing in this case.

Father's arguments contend that certain evidence concerning his alleged involvement in a prior CHINS action was inadmissible. Because there is substantial evidence to support the judgment independent of the court records that Father contends were inadmissible, any error in the admission of evidence was harmless. See In re Termination of Parent-Child Relationship of E.T., 808 N.E.2d 639, 646 (Ind. 2004) (noting that "improper admission of evidence is harmless error when the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the judgment"). And to the extent Father directs us to evidence of his cooperation with DCS-provided services, including the successful completed of the court-ordered alcohol treatment program, we decline any invitation to reweigh evidence.

Thus, we conclude there was sufficient evidence from which the trial court could conclude that there was a reasonable probability that continuing the parent-child relationship with Father would pose a threat to Child's well-being. Father raises no other challenge to the termination order. Accordingly, we affirm the court's order terminating Father's parental rights.

Affirmed.

KIRSCH, J., and MAY, J., concur.