

**FILED**

May 21 2019, 9:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Adam G. Forrest
BBKCC Attorneys
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of: <br><br> L.S. (Minor Child), <br> and <br> A.S. (Mother), <br> *Appellant-Respondent,* <br><br> v. <br><br> The Indiana Department of Child Services, <br> *Appellee-Petitioner* | May 21, 2019 <br><br> Court of Appeals Case No. 18A-JT-2881 <br><br> Appeal from the Union Circuit Court <br><br> The Honorable Mathew R. Cox, Judge <br><br> Trial Court Cause No. 81C01-1802-JT-13 |

**Baker, Judge.**

[1] A.S. (Mother) appeals the termination of her parent-child relationship with L.S. (Child), arguing that the trial court erred by admitting certain evidence and that the evidence was insufficient. Finding no reversible error and the evidence sufficient, we affirm.

## Facts

[2] Child was born on October 28, 2015, with drugs in her system.[1] The following day, the Department of Child Services (DCS) filed a petition alleging Child to be a Child in Need of Services (CHINS). On October 30, 2015, Mother admitted to the allegations in the CHINS petition, including Mother's use of illicit substances, Child experiencing withdrawal symptoms due to Mother's use of illicit substances, and Mother's uncertainty about the identity of Child's father. At the time of the hearing, Child was in the hospital, and the juvenile court ordered relative placement upon Child's release from the hospital. The juvenile court found Child to be a CHINS.

[3] At the December 22, 2015, dispositional hearing, the juvenile court ordered Mother to participate with certain services, including contacting the Family Case Manager (FCM) weekly; completing a parenting assessment and complying with any recommendations; completing a substance abuse assessment and complying with any recommendations; submitting to random

---

[1] At the time of Child's birth, the identity of her father was unknown. Child's father is not involved in this appeal.

drug screens; attending all scheduled visits with Child; and completing a detoxification treatment program and an inpatient treatment program and complying with all recommendations.

### *Mother's Drug Use*

[4] The FCM, who was assigned to this case in August 2016, testified that during her involvement in this case, Mother did not have a single clean drug screen. On December 15, 2015, Mother tested positive for cocaine and benzodiazepines. On January 7, 2016, Mother admitted to recently using cocaine. On January 10, 2016, when Mother went to Harbor Light Center, she admitted that she had used cocaine that day. On March 8, 2016, Mother was ordered to take a drug screen; she refused and left court before a screen could be administered. She refused to meet with the FCM for testing and did not return phone calls to set up tests.

[5] At the December 13, 2016, review hearing, there was evidence that during the review period, Mother had not appeared for other scheduled or random drug screens. During the hearing, she was ordered to take a drug test, but she failed to do so. Mother tested positive for cocaine on March 14 and June 13, 2017. On September 19, 2017, she refused to submit to a drug screen. A drug-testing service suspended its services due to Mother's non-compliance.

*Mother's Participation with Services and Visits*

[6]   In October 2015, Mother was referred for detoxification services at Harbor Light. On January 10, 2016, Mother went there for an assessment and detoxification. She completed the detoxification, but left the facility on January 19, 2016, before completing in-patient treatment. She failed to notify DCS that she left. At Mother's request, she was referred to Meridian Health Services. She completed her substance abuse assessment there but did not comply with the recommended intensive outpatient treatment, attending three out of twelve sessions in August 2016. Meridian eventually discontinued services, partly because Mother missed appointments and partly because Meridian learned that Mother was living in Ohio, and Meridian would not offer services there. In June or July 2017, DCS offered Mother services through Community Mental Health Center (CMHC), which was closer to Mother's location in Ohio; Mother cancelled three scheduled appointments, and as a result, CMHC would not schedule additional meetings with Mother.

[7]   Mother did not maintain regular contact with the FCM, making supervised visits with Child difficult to schedule. She visited Child in June 2016. At the March 14, 2017, review hearing, there was evidence that Mother had not contacted the FCM since the previous review hearing on December 13, 2016. Mother did not attend the Child and Family Team Meeting scheduled for March 3, 2017. A hearing took place on April 25, 2017, during which Mother's visits with Child were suspended; Mother had not visited Child during the reporting period before this suspension of visits.

[8] On February 15, 2018, DCS filed a petition to terminate the parent-child relationship. The factfinding hearing took place on May 2 and June 5, 2018. At the hearing, evidence was presented that Child does not know Mother, that Child is bonded to her maternal aunt and other family members, and that her caregivers have provided her permanency and stability. The FCM testified that in her opinion, termination is in Child's best interest.

[9] During the factfinding hearing, DCS offered Exhibits Sixteen and Seventeen into evidence. Each exhibit was an affidavit of Bridget Lemberg, the laboratory director of Forensic Fluids Laboratories, Inc. In the affidavits, Lemberg detailed the laboratory's procedures and stated that the procedures were followed for Mother's drug tests; the results of Mother's drug tests from August 31 and October 12, 2016, and May 3, 2017, were attached to the affidavits. Mother objected to the admission of these exhibits, arguing that the test results appeared to be unreliable and that the forensic lab technician was not there to testify. The State argued that the drug test results could be admitted because they met the requirements of the business records exception to the rule against hearsay.

[10] The juvenile court stated:

> . . . The Court will take the matter under advisement but will proceed as if they are admitted into evidence. So any subsequent testimony regarding drug screens will be allowed. If I determine that they are not admissible, then that . . . testimony will be

stricken from the record. If I determine they are admissible, then the evidence submitted, uh, for their testimony will be admitted. Okay?

Tr. Vol. III p. 34.

On November 2, 2018, the trial court issued an order terminating the parent-child relationship. The order included the following findings of fact:

> 19. On or about August 31, 2016, October 12, 2016, and May 3, 2017, Mother submitted to drug screens, and the results were positive for cocaine.
>
> ***
>
> 21. Mother did not complete services through Meridian, and around January 2017 Meridian ended services for Mother due to non-compliance.
>
> ***
>
> 23. DCS made a referral for services for the parents through CMHC around June or July 2017, but the parents did not complete services.
>
> 24. Mother has a history of unstable housing.
>
> ***
>
> 26. Mother and Father have not consistently visited Child.

Appealed Order p. 11. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

[12] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[13] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A) that one (1) of the following is true:
>
> > (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)    that one (1) of the following is true:

(i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

## II. Admission of Evidence

[14] Mother first objects to the trial court's admission of Exhibits Sixteen and Seventeen into evidence, arguing that the exhibits were inadmissible hearsay. We will reverse the trial court's decision regarding admission of evidence only when the decision is against the logic and effect of the facts and circumstances before the court. *B.H. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 355, 360 (Ind. Ct. App. 2013). Not all trial court error is reversible. *In re Termination of Parent-Child Relationship of E.T.*, 808 N.E.2d 639, 645 (Ind. 2004). "The improper admission of evidence is harmless error when the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the judgment." *Id.*

[15] Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is not admissible unless it falls under certain exceptions. Evid. R. 802. One such exception is that of records of a regularly conducted activity, which provides:

> A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) [the rule on self-authentication] or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Evid. R. 803(6).

[16] Our Supreme Court has explained:

[T]he business records exception to the hearsay rule is based on the fact that the circumstances of preparation assure the accuracy and reliability of the entries. As we have observed more recently, the reliability of business records stems in part from the fact that *the organization depends on them to operate*, from the sense that they are subject to review, audit, or internal checks, [and] from the precision engendered by the repetition. . . .

In essence, the basis for the business records exception is that reliability is assured because the maker of the record relies on the record in the ordinary course of business activities. The regular course of business must find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business. *Thus where a company does not rely upon certain records for the performance of its functions those records are not business records within the meaning*

*of the exception to the hearsay rule.* It is not enough to qualify under the business records exception to show that the records are made regularly; rather, the court must also look to the character of the records and their earmarks of reliability acquired from their source and origin and the nature of their compilation.

*E.T.*, 808 N.E.2d at 642-43 (citations and internal quotation marks omitted) (emphases added).

[17] The exhibits that contain Mother's drug test results do not fall under the business records exception to the rule against hearsay. Although the affidavits state that the laboratory reports were maintained in the normal course of business activity as business records, what we consider is whether a business depends on those records to function. Forensic Fluids Laboratories does not depend on these records to operate or to conduct business. Rather, the drug test results were documented for the benefit of DCS. Therefore, these exhibits were inadmissible as hearsay and should not have been admitted over Mother's timely objection. *See id.* at 644-45 (finding that reports of home visits and supervised visitations made for an Office of Family and Children did not qualify as business records because no organization depended on them to operate a business). Admission of this evidence requires expert testimony and the opportunity for cross-examination.

[18] The trial court erred by admitting the exhibits into evidence. Nonetheless, as discussed below, the trial court's determination is supported by substantial evidence independent of these two exhibits that satisfy us that its determination stands without reliance on these two exhibits.

# III. Remedy of Conditions Resulting in Removal

[19]     Mother also argues that there is not clear and convincing evidence that there is a reasonable probability that the conditions resulting in Child's removal will not be remedied. Her argument consists of challenging several of the juvenile court's findings of fact.

### Finding 19

[20]     Mother first challenges Finding 19, in which the trial court found that, based on the drug test results that were admitted by affidavit, Mother tested positive for cocaine. As discussed above, the trial court erred by admitting this evidence and accordingly, erred by relying on it in its determination.

### Findings 21 and 23

[21]     Mother next challenges the trial court's Findings 21 and 23, which stated:

> 21. Mother did not complete services through Meridian, and around January 2017 Meridian ended services for Mother due to non-compliance.
>
> ***
>
> 23. DCS made a referral for services for the parents through CMHC around June or July 2017, but the parents did not complete services.

Appealed Order p. 11. According to Mother, these findings of fact suggest that she simply ignored the referred services. She contends that, if she did not

complete services, it was because DCS did not offer services to her while she lived in Ohio. Yet while Mother lived in Indiana, she requested that services be provided through Meridian, and although DCS accommodated Mother's request, Mother did not complete services through that service provider. The FCM later referred Mother to CMHC for a substance abuse assessment precisely because it was closer to where Mother lived; at the time of the factfinding hearing, Mother had still not completed the assessment. This evidence supports the trial court's findings of fact regarding Mother's non-compliance with services.

### Finding 24

[22] Mother next challenges the trial court's finding that she has a history of unstable housing. The FCM testified that during her involvement in the case, Mother had not had stable housing. During these proceedings, Mother lived with Child's father, but they were evicted for not paying rent; Mother lived in Cincinnati, apparently as part of her employment caring for the residents of the home; and she again lived with Child's father in an apartment in Ohio because she had nowhere else to go. Mother's argument that there is a lack of evidence to support this finding is a request to reweigh the evidence, which we may not do. The trial court did not err by making this finding.

### Finding 26

[23] Mother also challenges the trial court's finding that she has not consistently visited Child. While Mother attributes her lack of visitation to the trial court's

order prohibiting her from visiting Child, the trial court prohibited Mother only because Mother had not complied with services. Moreover, during these proceedings, visits could not start because of Mother's lack of contact with DCS, and even when they did start, Mother did not visit Child because she failed to contact DCS. Mother's last visit with Child was in October 2017. Because Mother did not consistently visit Child, Child does not know her. The trial court did not err by making this finding.

[24] In sum, even excluding the improperly admitted evidence, we find that the juvenile court did not err by finding that DCS established by clear and convincing evidence that the conditions resulting in Child's removal are not likely to be remedied.[2]

[25] The judgment of the juvenile court is affirmed.

Najam, J., and Robb, J., concur.

---

[2] Mother also argues that there is insufficient evidence supporting the juvenile court's conclusion that continuation of the parent-child relationship poses a threat to Child. As these statutory elements are phrased in the disjunctive and we have found that sufficient evidence supports the element related to remedy of the conditions resulting in Child's removal, we need not and will not address this issue.