

FILED

Sep 24 2019, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Matthew D. Anglemeyer
Marion County Public Defender –
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the
Parent-Child Relationship of J.C.
and R.C. (Minor Children) and

B.C. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child
Services,

*Appellee-Petitioner,*

and

September 24, 2019

Court of Appeals Case No.
19A-JT-350

Appeal from the Marion Superior
Court

The Honorable Marilyn A.
Moores, Judge

The Honorable Scott B. Stowers,
Magistrate

Trial Court Cause Nos.
49D09-1803-JT-347
49D09-1803-JT-348

Child Advocates, Inc.,[1]

*Appellee-Guardian ad Litem*.

**Mathias, Judge.**

B.C. ("Mother") appeals the order of the Marion Circuit Court terminating her parental rights to her children J.C. and R.C. (collectively "the Children"). On appeal, Mother presents three issues, which we reorder and restate as:

> I.      Whether the trial court erred by denying Mother's motion to dismiss the petition to terminate her parental rights because the evidentiary hearings were not completed within the statutory 180-day time frame;
>
> II.      Whether the trial court abused its discretion by admitting into evidence the results of Mother's drug screens; and
>
> III.      Whether the trial court's termination orders are supported by sufficient evidence.

Concluding that Mother waived the statutory time limit, that the admission of the drug screen results was harmless, and that there is sufficient evidence to support the trial court's termination orders, we affirm.

---

[1] DeDe K. Connor filed an appearance on behalf of Child Advocates, Inc., but did not file a brief.

## Facts and Procedural History

[2] Mother, born in August 1986, has struggled with addiction since she was a teenager. Mother admitted to having used a "slew" of illicit drugs, including marijuana, cocaine, spice, and "probably" methamphetamine. Tr. Vol. 2, pp. 16, 125. Mother is the biological mother to five children, including the two sons involved in the present case: J.C., born in July 2014, and R.C., born in November 2015.[2]

[3] On May 28, 2016, Mother overdosed on her prescription medication and was found unresponsive in her home. The Department of Child Services ("DCS") removed the Children from the home and, on May 31, 2016, filed a petition that the Children were children in need of services ("CHINS").[3] On August 2, 2016, Mother admitted that the Children were CHINS. The trial court entered a dispositional decree that ordered Mother to participate in a variety of services, including participating in home-based therapy and home-based case management, undergoing a substance abuse assessment and following all recommendations, and submitting to random drug screens. The Children were placed in foster care. The permanency plan was reunification of the Children with Mother.

---

[2] Mother's three other children, all older, were also the subject of DCS intervention. These children were found to be in need of services, and Mother ultimately voluntarily terminated her parental rights to these children.

[3] The CHINS petition was subsequently amended to add the alleged fathers of J.C. and R.C.

[4] Mother was initially compliant with her home-based case worker, who set three goals for Mother: housing, employment, and sobriety. During the first month of her interaction with Mother, the home-based case worker met with Mother weekly to assist Mother in meeting these goals. After the first month, however, the meetings became more sporadic: once per month or less. Mother disclosed to her case manager that she was in an abusive relationship with her boyfriend. The case manager offered to provide Mother with domestic violence services, but Mother refused. Eventually, the case worker closed the home-based case management services as unsuccessful.

[5] Mother initially attended scheduled visitations and generally interacted well with the Children. Mother then relapsed into drug use, and DCS requested that Mother's visitations be suspended. The trial court granted this request at a periodic review hearing on February 28, 2017. Mother's visitation resumed in June 2017. From August until December of that year, Mother visited the Children once per week. Between February 2018 and March 2018, Mother missed several scheduled visitations with the Children. On one occasion when Mother did attend a scheduled visitation, she appeared paranoid and did not engage with the Children. She told the visitation supervisor that she thought her boyfriend was going to kill her. On those occasions where Mother did not show up for her scheduled visitation, the Children became upset and disappointed. Mother's last visitation was in March 2018.

[6] In October 2017, Mother was referred to an intensive outpatient ("IOP") alcohol and drug treatment program. Mother was "a little evasive" about her

drug use to the IOP director. The director recommended that Mother participate in IOP, which included weekly one-hour home-based sessions and three weekly three-hour sessions. The treatment plan was for Mother to refrain from drug and alcohol use and attend all sessions. Mother appeared to be highly motivated but failed to see her marijuana use as a problem, arguing that marijuana should be legalized. Mother's participation in IOP was spotty; she missed approximately half of the sessions due to alleged transportation issues. She then signed an agreement not to miss any more sessions but last attended a session in February 2018, after which time she was kicked out of the program. A few weeks before the October 11, 2018 evidentiary hearing on the petition to terminate Mother's parental rights, Mother contacted the director of the IOP program saying she was interested in rejoining the program.

[7] Mother's problems with services were related to her continued use of illicit drugs. Mother missed several scheduled drug screens, claiming that she had transportation issues. Her case manager therefore gave her bus passes. But Mother still missed numerous drug screens.

[8] On March 22, 2018, Mother was arrested after police found her in a truck with her boyfriend in possession of a handgun and illicit drugs. Mother was later arrested again, this time for resisting law enforcement by fleeing. Mother failed to appear at a hearing on the criminal matter, and the criminal court issued a warrant for her arrest. Mother chose not to appear for several court hearings in the CHINS and termination cases because she did not want to be arrested. Mother eventually pleaded guilty on October 2, 2018 to Level 4 felony

possession of cocaine, Level 5 felony possession of a handgun without a license, and Class A misdemeanor resisting law enforcement. Mother was sentenced to six years with three years executed on home detention and three years suspended to probation.

[9] On March 15 and 27, 2018, DCS filed petitions to terminate Mother's parental rights to R.C. and J.C., respectively. At a pre-trial hearing held on June 25, 2018, the trial court set the evidentiary hearing on the termination petition to be held on September 26 and October 10, 2018. At the beginning of the September 26 hearing, Mother moved for a continuance that the trial court denied. At the end of the October 10 hearing, the trial court continued the matter to the next day. At the beginning of the October 11 hearing, Mother moved for dismissal, claiming that the trial court had failed to conclude the termination hearings within the statutorily mandated timeframe. The trial court denied this motion. At the conclusion of the October 11 hearing, the trial court continued the hearing to November 26. On October 18, Mother filed a motion to reconsider the court's ruling on her oral motion to dismiss, which the trial court denied after a hearing. On January 14, 2019, the trial court entered findings of fact and conclusions of law terminating Mother's parental rights to the Children. Mother now appeals.

## I. Motion to Dismiss

[10] Mother argues that the trial court erred by denying her motion to dismiss the State's petition to terminate her parental rights because the termination hearing

was not completed within 180 days of the filing of the petition. The statute governing the time limits for hearings on termination petitions provides:

> (a) Except when a hearing is required after June 30, 1999, under section 4.5 of this chapter,[4] the person filing the petition shall request the court to set the petition for a hearing. Whenever a hearing is requested under this chapter, the court **shall**:
>
>> (1) commence a hearing on the petition not more than ninety (90) days after a petition is filed under this chapter; and
>>
>> (2) complete a hearing on the petition not more than one hundred eighty (180) days after a petition is filed under this chapter.
>
> (b) If a hearing is not held within the time set forth in subsection (a), upon filing a motion with the court by a party, the court **shall** dismiss the petition to terminate the parent-child relationship without prejudice.

Ind. Code § 31-35-2-6 (emphases added).

[11] Here, DCS filed the petition to terminate Mother's parental rights to R.C. on March 15, 2018, and filed the petition to terminate Mother's parental rights to J.C. on March 27, 2018. Thus, pursuant to Indiana Code section 31-35-2-6, the hearings on the petition regarding R.C. should have commenced no later than June 13, 2018 and completed no later than September 11, 2018. And the

---

[4] Neither party contends that this subsection is applicable here.

hearings on the petition regarding J.C. should have commenced no later than June 25, 2018 and completed no later than September 24, 2018.[5]

[12] However, the trial court did not commence a hearing on the termination petitions until September 26, 2018, and did not complete the hearings on the petition until November 26, 2018. Mother therefore argues that the trial court violated the plain language of subsection (a)(1) and (a)(2) of Indiana Code section 31-35-2-6, and that subsection (b) required the trial court to dismiss the petitions.

[13] At first blush, Mother's argument appears to have merit. But Mother's argument overlooks the fact that she failed to object to any delay in the hearings. Specifically, the trial court held a pre-trial hearing on June 25, 2018, which was already past the ninety-day deadline in R.C.'s case and was the last day of the ninety-day deadline in J.C.'s case. Mother appeared by counsel, and the trial court set the termination petition for evidentiary hearings to be held on September 26 and October 10, 2018. Mother did not object to the setting of these dates, which were outside both the ninety and 180-day time limits set forth in Indiana Code section 31-35-2-6. Not only did Mother fail to object, the trial court specifically noted that Mother affirmatively waived the "180 day requirement." Appellant's App. p. 75. Additionally, when the trial court began the hearing on September 26, Mother's counsel did not object to the lateness of the hearings but instead moved for a continuance. Mother did not indicate any

_____

[5] September 23, 2018 was a Sunday; thus the next business day was September 24.

issue with the delay in the hearings until the third day of the evidentiary hearing, when she orally moved to dismiss. When the trial court denied her oral motion, Mother filed a written motion to reconsider, which the trial court also denied.

[14] The State contends that these facts demonstrate that Mother waived any objection to the delay in the hearings. We agree. This court addressed a similar situation in *In re N.C.*, 83 N.E.3d 1265 (Ind. Ct. App. 2017). In that case, DCS filed a petition to terminate the parental rights of the father of N.C. The hearing on the termination petition was not commenced within ninety days of the filing of the petition, nor was it completed within 180 days after the filing of the petition. Instead, it was conducted 222 days after the filing of the petition.

[15] On appeal, the father argued that the trial court should have dismissed the petition when he orally moved to dismiss at the start of the evidentiary hearing. The *N.C.* court disagreed, holding that the father had waived any argument that the hearings were held beyond the statutory deadlines.[6] *Id.* at 1267. The *N.C.* court held that the father had acquiesced to the hearing date, writing:

> At a hearing conducted on December 9, 2016, [N.C.]'s Mother requested a continuance and a discussion ensued as to available court dates. The court reporter suggested March 21, 2017, and Father's counsel responded: "That sounds good." Father's counsel then inquired about the specific length of the fact-finding hearing, whether all day or one-half day. In general, "waiver"

---

[6] The *N.C.* court also noted that the father orally moved to dismiss and filed no written motion, despite the plain language of the statute contemplating the filing of such a motion. *Id.* In this respect, *N.C.* differs from the present case because Mother did file a written motion after she orally moved to dismiss.

connotes an "intentional relinquishment or abandonment of a known right." *Plank v. Cmty. Hospitals of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013). We agree with the DCS that Father waived his right to challenge the setting of that factfinding hearing date, although it fell outside the statutory 180 days. As such, Father can be afforded no relief in this appeal.

*Id.* (record citations omitted).

[16] The same is true here. At the pre-trial hearing where the trial court set the evidentiary hearings for dates beyond the statutory time limits, Mother not only did not object, but she affirmatively waived the 180-day time limit. Moreover, Mother did not move to dismiss until the third day of the hearing. Accordingly, she cannot claim on appeal that the trial court erred by setting the hearings for dates beyond the statutory time limit.[7] *See id.*

[17] Mother acknowledges the holding in *N.C.* but argues that we should follow a line of cases interpreting a similar statutory time limits for fact-finding hearings in CHINS cases. The relevant CHINS statute provides in part:

> (a) Except as provided in subsection (b), unless the allegations of a petition have been admitted, the juvenile court **shall** complete a factfinding hearing not more than sixty (60) days after a petition alleging that a child is a child in need of services is filed in accordance with IC 31-34-9.

---

[7] To the extent that Mother argues that she did not waive the ninety-day time limit, we disagree. The trial court noted that Mother affirmatively waived the 180-day time limit on the ninetieth day after the filing of the petition. Thus, when she waived the 180-day time limit, she necessarily waived the ninety-day time limit by failing to object to the setting of the hearings beyond the ninety-day limit.

(b) The juvenile court may extend the time to complete a factfinding hearing, as described in subsection (a), for an additional sixty (60) days if all parties in the action consent to the additional time.

* * *

(d) If the factfinding hearing is not held within the time set forth in subsection (a) or (b), upon a motion with the court, the court **shall** dismiss the case without prejudice.

Ind. Code § 31-34-11-1 (emphases added).

[18] Prior to 2012, subsection (d) was not yet part of this statute. *See In re J.R.*, 98 N.E.3d 652, 655 (Ind. Ct. App. 2018). Before this subsection was added, we had held that the use of the word "shall" in subsection (a) of this statute was "directory and not mandatory." *Parmeter v. Cass Cnty. Dep't of Child Servs.*, 878 N.E.2d 444, 448 (Ind. Ct. App. 2007). "Our holding [in *Parmeter*] was based on the principle that 'the term "shall" is directory when the statute fails to specify adverse consequences, the provision does not go to the essence of the statutory purpose, and a mandatory construction would thwart the legislative purpose.'" *J.R.*, 98 N.E.3d at 654 (quoting *Parmeter*, 878 N.E.2d 448). Prior to the addition of subsection (d), Indiana Code section 31-34-11-1 contained no specific consequence for failure to hold the fact-finding hearing within the statutory time frame. *See id*. at 654–55, The *Parmeter* court therefore concluded that a mandatory construction would thwart the legislative purposes of the CHINS statutes to assist parents to fulfill their parental obligations and remove children only when in their best interests "by requiring dismissal of CHINS cases where

continuances of the fact-finding or dispositional hearings are needed for legitimate reasons, such as the unavailability of parties or witnesses or the congestion of the court calendar, merely because one party is being a stalwart." 878 N.E.2d at 448.

[19] After the addition of subsection (d) in 2012, we reached a different conclusion under similar circumstances. In *J.R.*, a CHINS petition was filed on September 29, 2016. The trial court began a fact-finding hearing on November 22, 2016, within the sixty-day deadline. On November 29, 2016 (the day after the sixty-day deadline expired), the trial court ordered that the hearing be completed on February 6, 2017—130 days after the CHINS petition was filed. The parents subsequently objected to the trial court continuing the hearing outside the sixty-day limit imposed by Indiana Code section 31-34-11-1, but the trial court overruled their objection. The parents then filed a motion to dismiss the CHINS petition. The trial court denied the motion and ultimately adjudicated the parents' children to be CHINS.

[20] On appeal, the parents argued that the trial court erred by denying their motion to dismiss. We acknowledged the holding of *Parmeter* but noted that, since that case, section 31-34-11-1 had been amended to add subsection (d), which provides that upon motion, the trial court "shall dismiss the case without prejudice" "[i]f the factfinding hearing is not held within the time set forth in subsection (a) or (b)." The *J.R.* court therefore concluded:

> Subsection (d) cures one of the ambiguities of the statute (as identified by *Parmeter*) by spelling out the adverse consequence

for failing to complete a factfinding hearing within the sixty-day period. . . . [T]he 2012 revision leaves very little room for doubt regarding legislative intent. Rather than changing "shall" to "may" or adding provisions allowing for continuances for good cause, the General Assembly instead added subsection (d). Simply put, there is no longer any reason to believe that the General Assembly intends Indiana Code section 31-34-11-1 to mean anything other than what its clear language indicates, i.e., that a factfinding hearing shall be completed within sixty days of the filing of a CHINS petition and that failure to do so is grounds for dismissal. *Parmeter* is no longer good law on this point, and we conclude that the juvenile court erred in denying [the] [p]arents' motion to dismiss.

98 N.E.3d at 655.

[21] We conclude that *J.R.* is readily distinguishable from the present case. The *J.R.* court was construing a CHINS statute, not the termination statute at issue here. Moreover, the parents in *J.R.* clearly objected to the trial court's continuance of the hearing outside the sixty-day time limit of the applicable statute. Here, as noted, Mother not only failed to object, but specifically acquiesced to the delay in the termination hearings.

[22] Mother also cites *In re T.T.*, 110 N.E.3d 441 (Ind. Ct. App. 2018), in support of her argument that the time limit is absolute and cannot be waived. In that case, a CHINS petition had been filed on August 17, 2017. The trial court commenced the fact-finding hearing on October 6, 2017, within the sixty-day time limit. The parties then consented to an additional sixty days to complete the hearing pursuant to section 31-34-11-1(b). The hearing was then continued to November 7, 2017, a date within the new 120-day time limit. However, on

November 7, DCS requested a continuance, and the trial court rescheduled the hearing for January 3, 2018—139 days after the filing of the CHINS petition. At the start of the January 3 hearing, the mother moved to dismiss the proceedings on grounds that the hearing had not been completed within the statutorily mandated time limit. The trial court denied the motion and adjudicated the mother's children to be CHINS.

[23] On appeal, the mother argued that the trial court had erred by denying her motion to dismiss. DCS claimed that dismissal was not required because Indiana Code section 31-34-11-1 did not create a hard and fast deadline and because the mother waived her objection by agreeing to the continuance. The *T.T.* court rejected DCS's first argument, concluding that "the General Assembly clearly intends for the timeframe set forth in Indiana Code section 31-34-11-1 to be a certain deadline." *Id*. at 443. With regard to the waiver argument, the court concluded:

> while subsection (a) provides that the parties may waive the initial 60-day deadline by agreeing to a continuance, subsection (b) does not include any such provision. This lack of allowance for an additional extension of time indicates that the General Assembly intends to require that a factfinding hearing must be completed within 120 days of the filing of a CHINS petition **regardless of any act or agreements of the parties**. To allow the parties to agree to dates beyond the maximum 120-day limit would thwart the legislative purpose of timely rehabilitation and reunification of families that are subject to CHINS proceedings.

*Id.* (emphasis added); *see also In re M.S.*, 124 N.E.3d 1234 (Ind. Ct. App. 2019) (following *T.T.* and holding that the trial court erred in denying mother's motion to dismiss even though it was mother who requested the continuance that resulted in the hearing being set beyond the 120-day time limit), *trans. pending*.

[24] Mother argues that we should apply the reasoning of *T.T.* and *M.S.* to the facts of the present case and hold that the statutory time limits for termination hearings are absolute and cannot be waived by the parties. We decline to do so. The aforementioned cases dealt with the time limits set forth in Indiana Code section 31-34-11-1 for CHINS fact-finding hearings. In contrast, here, we are concerned with the time limits for termination hearings set forth in Indiana Code section 31-35-2-6. Cases interpreting the former statute do not control in cases, such as the present one, involving the latter statute.

[25] More importantly, Mother not only failed to object to the setting of the hearing outside the statutory timeframe, she affirmatively waived the deadline on the record. Accordingly, she failed to preserve any claim of error. *See N.C.*, 83 N.E.3d at 1267. Mother even sought a continuance on the first day of the already-delayed hearing. To permit Mother, after having affirmatively waived the 180-day deadline, to seek dismissal based on the trial court's failure to complete the hearing within 180 days would effectively allow her to "sandbag" the trial court. This would allow a parent to take advantage of invited error. *See Prime Mortgage USA, Inc. v. Nichols*, 885 N.E.2d 628, 657 (Ind. Ct. App. 2008) (noting that the doctrine of invited error precludes a party from taking

advantage of an error that he or she commits, invites, or which is the natural consequence of his or her own neglect or misconduct).

[26] Although we do not suggest that Mother engaged in such "sandbagging" here, the result is the same: she waived the statutory deadline, then sought dismissal after the court acted on her waiver. Under such circumstances, Mother cannot complain that the hearing was held outside the statutory timeframe. Nor has Mother identified any actual prejudice to her ability to present her case as a result of the delay. Accordingly, we hold that the trial court's failure to hold and complete the evidentiary hearings on the termination petitions within the statutory timeframe did not constitute reversible error.

## II. *Admission of Evidence*

[27] Mother also contends that the trial court abused its discretion by admitting evidence of Mother's drug screens. In termination cases, as in all cases, questions regarding the admission of evidence are entrusted to the sound discretion of the trial court. *B.H. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 355, 360 (Ind. Ct. App. 2013). A trial court abuses its discretion only when its decision is against the logic and effect of the facts and circumstances before the court, or if the court misinterprets the law. *Id.*; *In re T.B.*, 895 N.E.2d 321, 333 (Ind. Ct. App. 2008).

[28] Mother claims that the laboratory results of her drug screens constituted inadmissible hearsay. Hearsay is defined as a statement that "is not made by the declarant while testifying at the trial or hearing," and that "is offered in

evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). "Hearsay is not admissible unless these rules or other law provides otherwise." Evid. R. 802. The exceptions to the hearsay rule include:

> **(6) Records of a Regularly Conducted Activity**. A record of an act, event, condition, opinion, or diagnosis if:
>
>> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>>
>> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>>
>> (C) making the record was a regular practice of that activity;
>>
>> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(9) or (10) or with a statute permitting certification; and
>>
>> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Evid. R. 803(6).

[29]  In *In re L.S.*, 125 N.E.3d 628, 634 (Ind. Ct. App. 2019), this court held that the drug test reports were not admissible under the business records exception to the hearsay rule because, even though an affidavit of the laboratory director stated that the reports were maintained in the normal course of business activity, the laboratory did not depend on the reports to operate or conduct its business. Rather, the drug test reports were documented for the benefit of DCS.

*Id.* (citing *In re E.T.*, 808 N.E.2d 639, 644–45 (Ind. 2004) (holding that reports of home visits and supervised visitations made for the Office of Family and Children did not qualify as business records because no organization depended on them to operate)).

[30] Mother argues that the same holds true here, i.e., the results of her drug tests were inadmissible hearsay. Even if we agreed with her, she would not prevail. Not all evidentiary error is reversible error, as the improper admission of evidence will be considered harmless when the trial court's judgment is supported by substantial independent evidence such that there is no substantial likelihood that the questioned evidence contributed to the judgment. *B.H.*, 989 N.E.2d at 360.

[31] The drug test results at issue here show that Mother tested positive for cocaine and marijuana four times. But, at the termination hearing, Mother admitted that she had a substance abuse problem and had abused drugs since she was a teenager. Moreover, Mother should have submitted over 200 drug screens but submitted less than half this amount. From this, the trial court could reasonably infer that Mother would have tested positive for these missed screens. *See In re A.B.*, 924 N.E.2d 666, 671 (Ind. Ct. App. 2010). Mother was also convicted for possession of cocaine. In other words, the evidence establishing Mother's repeated substance abuse was overwhelming, and the admission of the four positive drug screens did not impair Mother's substantial rights. *See D.B.M. v. Ind. Dep't of Child Servs.*, 20 N.E.3d 174, 179 (Ind. Ct. App. 2014) (noting that

admission of improper evidence is harmless if such does not affect a party's substantial rights), *trans. denied*.

### III. Sufficiency of the Evidence

[32] Mother also claims that DCS failed to present sufficient evidence to support the trial court's decision to terminate her parental rights to the Children. The controlling statute provides that a petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).[8]

---

[8] Mother does not challenge the trial court's conclusion that DCS met its burden under subsection 4(b)(2)(A), regarding the time the Children have been removed from her care, nor does she challenge the trial court's conclusion that DCS met its burden under subsection (D), regarding the plan for the care and treatment of the Children.

[33] DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009). Because Indiana Code section 4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010). Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id*. If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[34] We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility, and we consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id*. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id*. Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

[35] We have also often noted that the purpose of terminating parental rights is not to punish parents but to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for their termination when clear and convincing evidence establishes that they are unable or unwilling to meet their responsibilities as parents. *Id.* Thus, parental interests must be subordinated to the children's interests in determining the proper disposition of a petition to terminate parental rights. *G.Y.*, 904 N.E.2d at 1259.

[36] In the present case, Mother does not challenge any of the trial court's factual findings as being clearly erroneous. We therefore accept the trial court's findings as true, *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997), and determine only whether these unchallenged findings are sufficient to support the judgment. *In re A.M.*, 121 N.E.3d 556, 562 (Ind. Ct. App. 2019), *trans. denied*; *see also T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012) (when unchallenged findings support termination, there is no error), *trans. denied*.

## A. *Remedy of Conditions that Led to Removal*

[37] Mother contends that the trial court clearly erred by concluding that there was a reasonable probability that the conditions that resulted in the Children's removal from her care, or the reasons for placement outside her home, would not be remedied. When deciding whether there is a reasonable probability that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, the trial court must determine a parent's

fitness to care for the child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156–57 (Ind. Ct. App. 2013), *trans. denied*. The trial court may disregard efforts made only shortly before termination and give more weight to a parent's history of conduct prior to those efforts. *In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013).

[38]   In the present case, the trial court concluded:

> There is a reasonable probability that the conditions which resulted in the children's removal and continued placement outside of the home will not be remedied by their mother. [Mother] has had over two and a half years to put forth an effort and has been unable to do so. She has struggled with drug addiction for several years and has made little progress despite multiple referrals designed to address her sobriety and stability.

Appellant's App. pp. 153–54.

[39]   The trial court's unchallenged findings of fact are sufficient to support this conclusion. Specifically, the trial court found:

> 18. Amanda Rinehart of Capital City provided Home Based Therapy to [Mother] from November 2017 to January 2018.
>
> 19. Ms. Rinehart only met with [Mother] for a couple of sessions and more often than not, [Mother] failed to appear.
>
> 20. During the intake session with Ms. Rinehart, [Mother] did express a desire to get clean and sober. Her drugs of choice were marijuana and cocaine.

21. However, on the sessions that [Mother] did appear, she was habitually late and made no progress and this referral was closed unsuccessfully.

22. Ms. Rinehart believed that [Mother] needed inpatient substance abuse treatment.

23. Between January 8, 2018 and February 5, 2018, [Mother] submitted to four drug screens; all of which were positive for marijuana or marijuana and cocaine. She has not submitted a screen since February 2018.[9]

24. [Mother] had a prior CHINS case involving her other children which culminated in her parental rights being voluntarily terminated; as well as a previous "Informal Adjustment." The Informal Adjustment was also drug related.

25. [Mother] has struggled with addiction since her teenage years.

26. On or about March 22, 2018, while the CHINS case was open and after this Termination Action was filed, [Mother] was arrested within a few blocks of this Court building on narcotics charges.

27. [Mother] later pled guilty and was convicted of charges arising from the March 22, 2018 arrest. Specifically, she pled guilty to Possession of Cocaine (L-4 Felony); and Carrying a Handgun Without a License (L-5 Felony). She was sentenced to three (3) years on home detention and GPS monitoring through Marion County Community Corrections.

28. [Mother]'s parenting time was again suspended by the CHINS Court in April 2018 and she hasn't seen the children since February or March 2018.

---

[9] As noted above, even if the evidence regarding Mother's drug test results was improperly admitted, this error was harmless given the other evidence clearly establishing Mother's use of illicit drugs.

29. [Mother] has received numerous drug addiction services. None were successfully completed.

* * *

31. Mark Pardue of NYAP provided Home Based Therapy for [Mother] from October 2017 to February 2018.

32. Mr. Pardue established the goal for [Mother] of refraining from drug and alcohol use.

33. Mr. Pardue intended to meet with [Mother] once a week. However, [Mother] missed approximately half of the sessions.

34. Ultimately, [Mother]'s attendance took a "nosedive" and she was unsuccessfully discharged in February 2018.

35. Mr. Pardue recommends that [Mother] participate in inpatient treatment.

36. Throughout the duration of the CHINS case, [Mother] should have submitted approximately 220 drug screens. She has only submitted to approximately 70 and only four in the past year and none since February 2018.

Appellant's App. pp. 152–53.

[40]   These unchallenged findings of fact clearly show that Mother has failed to adequately address her substance abuse problems. She repeatedly missed scheduled drug screens, which raises a reasonable inference that she would have tested positive had she submitted to the scheduled screens. *See In re A.B.*, 924 N.E.2d at 671 (noting that a parent cannot be permitted to refuse to submit to drug testing and later claim that there was no proof that the parent continued to use drugs). Mother admitted to having a substance abuse problem yet failed to

complete any of the services offered to help her with this problem. She was also arrested and convicted for possession of cocaine during the CHINS case. Mother's inability to successfully address her substance abuse problem supports the trial court's conclusion that there is a reasonable probability that the conditions that resulted in the Children's removal will not be remedied.[10]

## B. Best Interests of the Children

[41] Mother also argues that the trial court clearly erred in concluding that termination of her parental rights was in the best interests of the Children. In this regard, the trial court concluded: "Termination of the parent-child relationship is in the children's best interests. Termination would allow them to be adopted into a stable and permanent home where their needs will be safely met." Appellant's App. p. 154.

[42] When determining what is in the best interests of a child, the trial court must go beyond the factors identified by DCS and look to the totality of the evidence. *A.D.S.*, 987 N.E.2d at 1158. The trial court must subordinate the interests of the parent to those of a child, and the court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.* Moreover, a recommendation by the case manager or child advocate to

---

[10] Mother also argues that the trial court erred in determining that there was a reasonable probability that the continuation of the parent-child relationship poses a threat to her Children's well-being. Because we conclude that DCS proved that there was a reasonable probability that the conditions which resulted in the Children's removal from Mother's care would not be remedied, we need not address her arguments directed at the second "threat" prong of Indiana Code section 31-35-2-4(b)(2)(B). *See In re A.K.*, 924 N.E.2d at 220 (noting that section 4(b)(2)(B) is written in the disjunctive and that the trial court is required to find that only one prong of subsection (b)(2)(B) has been established).

terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

[43] Here, the Children's case manager and the guardian ad litem both testified that termination of Mother's parental rights was in the best interests of the Children. The case manager testified that despite the CHINS case having dragged on for over two years, Mother had yet to complete the court-ordered home-based therapy, home-based case management, or drug treatment. Nor had Mother been able to demonstrate an ability to provide a safe and stable environment in which to raise the Children. The case manager therefore believed termination of Mother's parental rights was in the Children's best interests. The guardian ad litem testified that Mother had not completed the services offered to her to address her substance abuse, which was what prompted DCS's involvement. The guardian ad litem testified that termination of Mother's parental rights was in the Children's best interests because this would give them permanency after two years of foster care. This testimony, combined with evidence that the conditions that caused the removal of the Children from Mother's care would not be remedied, was sufficient to show by clear and convincing evidence that termination of Mother's parental rights was in the best interests of the Children. *See A.D.S.*, 987 N.E.2d at 1158.

## Conclusion

[44] Mother waived the statutory time limits within which the trial court was required to commence and complete the hearings on DCS's petitions to

terminate her parental rights. Thus, the trial court properly denied Mother's subsequent motion to dismiss based on the failure to complete the hearings within the statutory time limits. Any error in the admission of the results of Mother's drug screens was harmless given the other substantial evidence of Mother's substance abuse. And there was sufficient evidence to support the trial court's termination order. We therefore affirm the judgment of the trial court.

[45] Affirmed.

Robb, J., concurs.

Pyle, J., concurs in result with opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of J.C. and R.C. (Minor Children) and | Court of Appeals Case No. 19A-JT-350 |
| B.C. (Mother), | |
| *Appellant-Respondent,* | |
| v. | |
| Indiana Department of Child Services, | |
| *Appellee-Petitioner,* | |
| and | |
| Child Advocates, Inc., | |
| *Appellee-Guardian ad Litem.* | |

**Pyle, Judge concurring in result with opinion.**

[46] I concur in the result reached by my colleagues, but I write separately to state that I believe that the admission of Mother's drug test results (Exhibits 17-20) was not erroneous; they were properly admitted under the business records exception to the hearsay rule. Evid. R. 803(6).

[47] I respectfully disagree with the holding reached in *In re L.S.*, 125 N.E.3d 628 (Ind. Ct. App. 2019). *See In re F.S.*, 53 N.E.3d 582, 596 (Ind. Ct. App. 2016) (noting that each panel of this Court has coequal authority to address an issue and is not bound by another panel's prior decision). In that case, another panel held that reports of drug test results were not admissible under the business records exception. That panel relied on the reasoning provided by our Indiana Supreme Court in *In re E.T.*, 808 N.E.2d 639 (Ind. 2004).

[48] In *E.T.*, Justice Rucker noted that the reliability of business records collected in the ordinary course of business is what gives courts the assurance to admit into evidence items otherwise considered hearsay. *In re E.T.*, 639 N.E.2d at 643. In other words, "business records are made reliable by 'systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.'" *Id.* (quoting Advisory Committee's Note to Fed. R. Evid. 803(6); *see also Stahl v. State*, 686 N.E.2d 89, 92 (Ind. 1997)). "It is not enough to qualify under the business records exception to show that the records are made regularly; rather, the court must also look to 'the *character* of the records and their *earmarks* of reliability acquired from their source and origin and the nature of their compilation.'" *E.T.*, 639 N.E.2d at 643 (quoting *Palmer v. Hoffman*, 318 U.S. 109, 114 (1943) (emphasis added)).

[49] In *E.T.*, our supreme court found that reports describing home visits and supervised visitations produced by a non-profit agency were not business

records for several reasons: (1) the reports contained unsubstantiated third-party observations; (2) the reports contained conclusory lay opinions; (3) the reports were nothing like the traditional financial statements, inventory records, or administrative and operational documents admitted as business records in Indiana; and (4) the non-profit agency worked solely for a governmental agency, the Office of Family and Children. *Id*. at 643-645.

[50] None of these reasons apply to the drug test results admitted in this case. In this case, the evidence showed that the urine samples for Mother's drug tests were collected here in Indiana and submitted to Redwood Toxicology Laboratory ("Redwood") in California. John Martin ("Martin"), a supervising toxicologist, testified that Redwood receives samples, employs scientific methods to analyze urine samples for the presence of illicit substances, and produces reports to multiple clients. (Tr. 58-86). None of the reports produced by Redwood and admitted into evidence by the trial court contained unsubstantiated third-party observations or conclusory lay opinions. (Petitioner's Ex. 17-20). Using scientific principles widely accepted in the scientific community, the reports merely noted whether illicit substances were present and in what concentrations. Further, the reports fit within the type of administrative or operational business documents Indiana judges see and admit into evidence on a regular basis. Finally, there was testimony that Redwood has multiple clients to whom it releases reports as a part of its business; they do not work solely for the Department of Child Services. As a result, if an adequate foundation is laid, it is precisely these characteristics and earmarks of

reliability that make the drug testing reports at issue admissible under the business records exception.

[51]     As a result, I would find that the trial court did not err in admitting Exhibits 17-20 into evidence under the business records exception. In all other respects, I concur with my colleagues.