## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 06 2020, 10:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
LaPlante LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of B.J.B. (Minor Child)

and

N.D. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

August 6, 2020

Court of Appeals Case No. 20A-JT-462

Appeal from the Vanderburgh Superior Court

The Honorable Robert J. Pigman, Judge

Trial Court Cause No. 82D04-1902-JT-276

**Crone, Judge.**

# Case Summary

N.D. (Father) appeals the involuntary termination of his parental rights to his minor child B.J.B. (Child). We affirm.

# Facts and Procedural History

B.J.B. was born on January 17, 2015. R.B. (Mother) is her biological mother. Father is her biological father, and paternity was established in a separate cause by the Vanderburgh Superior Court. The Vanderburgh County Division of Family and Children (DCS) filed a petition to terminate Father's parental rights on February 11, 2019. Factfinding hearings were held on July 3 and August 1, 2019.[1] Thereafter, the trial court made the following relevant findings of fact:[2]

> 5. Prior to filing the most recent CHINS petition [September 5, 2017], DCS investigated allegations that Mother had been admitted to St. Vincent Hospital on August 30, 2017 for an attempted suicide wherein she ingested over 25 [K]lonopin. She also tested positive for methamphetamine, amphetamine, benzodiazepine, and marijuana while at the hospital. The report source stated she was suffering from post-partum depression.
>
> 6. Mother was uncooperative and refused to speak to the assessment worker. The assessment worker went to Mother's home. She refused to permit him access to the home, to Child,

---

[1] Separate evidentiary hearings were held regarding Mother, and her parental rights were involuntarily terminated on August 2, 2019. Mother is not a party to this appeal.

[2] We have replaced references to the parties' names and initials with the aforementioned designations.

and to Child's nine[-]month[-]old sibling, A.D. In an assessment during the prior month of July, Mother had claimed that Child was staying with relatives out of state far away. She would not name the relative or identify the state. Child was unable to be located.

7. While the assessment worker was outside Mother's home, a Vectren utilities truck parked outside the home. The utility worker told the assessment worker that he was shutting off the gas and electric to the home.

….

9. On September 5, 2017, DCS filed a Verified Petition Alleging that Child was in need of services under cause number, 82D04-1709-JC-001604, due to Mother's overdose, suicide attempt, untreated mental health conditions, substance abuse, and home conditions.

10. An initial and detention hearing was held [and Child was ordered detained for her protection] on September 5, 2017….

**C. FACTS RELATING TO CHILD'S CONTINUED REMOVAL FROM [FATHER'S] HOME AND CARE: REASONABLE PROBABILITY OF [FATHER] NOT REMEDYING REASONS FOR REMOVAL, THREAT TO CHILD'S WELLBEING**

1. Father has a criminal history that includes multiple convictions for domestic violence. In November of 2005, Father was charged with Domestic Battery and Interference with Reporting of a Crime. He [pled] guilty and received a sentence of one year in the Vanderburgh [C]ounty [J]ail suspended on the condition he enroll in and complete Domestic Abuse Intervention Program.

2. In June of 2006, Father was charged with domestic battery. He

entered into a plea agreement and pled guilty to battery enhanced to a class D felony. He received a sentence of eighteen months with the department of corrections but the sentence was suspended upon his successful completion of a domestic abuse intervention program.

3. In February of 2008, Father was charged with felony residential entry, domestic battery, and resisting law enforcement. He entered a plea agreement and pled guilty to misdemeanor trespass and resisting law enforcement. He was sentenced to two years in the Vanderburgh [C]ounty [J]ail, sentence suspended.

4. In addition to Father's history of domestic violence, he suffers from severe mental illness that includes delusions, paranoia, and visual and auditory hallucinations. Father has been diagnosed with Other Psychotic Disorder Not Due to a Substance or Known Psychological Condition, Mild Intellectual Disabilities, Post-Traumatic Stress Disorder, and Personality Disorder.

5. On January 17, 2015, DCS received a report alleging that Mother had tested positive for amphetamines at the birth of Child. She also tested positive for cocaine two weeks before delivery. On January 22, 2015, DCS filed a Verified Petition Alleging that Child was in need of services under cause number, 82D04-1501-JC-000097, due to Mother's substance abuse. During the course of that CHINS case, alleged Father had personal notice of the CHINS proceedings but did not appear before the Court. He was defaulted and never participated in the CHINS proceeding. Child was eventually reunited with Mother in March of 2016.

6. In July of 2016, Father was charged with felony theft of a firearm, pointing a firearm at another, and unlawful possession of a firearm by a domestic batterer. He entered into an agreement and pled guilty to theft of a firearm and unlawful possession of a firearm by a domestic batterer. He was sentenced to one year in

the department of corrections with his sentence suspended on the condition he meet with Southwestern Indiana Mental Health and participate in the Recovery Works Program while on probation.

7. Father attempted to explain the events that resulted in these charges to his therapist much later in February of 2018 while undergoing a comprehensive assessment at Southwester[n] Behavioral Health. He still had difficulty recognizing his delusions from reality. …

8. Also in July of 2016, during his incarceration, Father was charged with two counts of felony prisoner possessing a deadly weapon. …

9. Approximately a year and a half after Child was reunified with her Mother in her prior CHINS case, DCS filed a Verified Petition Alleging that Child was again a child in need of services….

10. Child was later located with Father on September 7, 2017. He stated that Mother had abandoned Child to his care several months earlier. He had not taken any steps to establish paternity and had multiple felony convictions. Father was then residing with girlfriend [S.B.], who tested positive for methamphetamine. Child was removed from Father on that date with the assistance of law enforcement.

11. Father had sought treatment for his mental illness in August of 2017, reporting he was having a difficult time as he was caring for Child.

….

15. Father had a few supervised visits with Child in late September and early October 2017. … [H]e cut the visit short when Child cried inconsolably. Visits were put on hold in early October when he had active warrants for his arrest.

16. Father has had no contact with Child since October of 2017.

….

19. In early spring of 2018, Father continued to suffer from extreme paranoia and reported that he remained paranoid of others, believing everyone is planning to kill him all of the time.

….

21. In July of 2018, Father was admitted to Deaconess Cross Pointe where he was diagnosed with Psychotic Disorder [and] cocaine abuse from testing positive for cocaine, ….

….

24. Shortly [after paternity was established], Father's disposition was held on August 7, 2018. He was ordered to continue receiving treatment at Southwestern Behavior Healthcare and asked to sign releases so DCS could obtain treatment records. He was ordered to participate in fatherhood engagement which included the services of a parent aide to help him resource, assist with obtaining housing, and securing a source of income. He was ordered to remain drug and alcohol free and submit to random drug screens. He was also to undergo a parenting assessment to evaluate what types of parenting classes might best assist him.

25. The Parenting and Family Functioning Assessment of Father was undertaken by Oliva Golike at Ireland Home Based Services who met with Father six times in August and September of 2018.

26. During that period of time, Father had no source of income, had lived in two homeless shelters, and was currently staying in a hotel with [J.B.] who stated she was helping him out so he would not be homeless.

27. During the assessment, Ms. Golike found an obvious disturbance in Father's affect, mood, and behavior during the sessions. He further shared with her a variety of events such as participating in a gang and shooting while in the gang, being [run] off the road in an ice storm, traveling with a carnival as a child, being charged with capital murder but released when the killer was found, and having an ankle injury from having to jump off a two[-]story building when people were trying to kill him.

….

29. She was unable to complete the assessment with Father because he became loud and she felt uncomfortable and left.

….

31. Father reports he takes his medications, but presented multiple months of unconsumed medication bottles to his skills training coach and psychiatrist "consistent with impressive non-compliance" in December of 2018.

….

33. In March of 2019, a hearing was held on Father's desire to resume visitation with the child. Prior to the conclusion of the hearing, an agreement was reached between the parties that therapeutic visitation with Father would only resume after therapist Hanna Stoltz had met with Child and determined Child was ready and such visits would be appropriate.

34. Thereafter, Father continued to communicate frequently and erratically with Ms. Stoltz until he sent her the threatening text "I wanna see my daughter I am about to get angry" on March 30, 2019.

35. Father was arrested on March 30, 2019 and charged with domestic battery with bodily injury to a pregnant woman and

intimidation where threat is to commit a forcible felony against his live[-]in girlfriend [J.B.] He was incarcerated from the time of his arrest until those charges were dismissed on July 3, 2019, the first day of the termination hearing.

36. During the course of the CHINS proceeding, Father has not maintained stable housing and often suffered periods of homelessness. At the time of termination hearing, he indicated he was sleeping in the living room of the one[-]bedroom apartment of his god-aunt. Father simply doesn't have a place for him and Child to live.

37. During the course of the CHINS proceeding Father has had no reliable source of income and has unsuccessfully applied for disability on multiple occasions.

Appealed Order at 3-8 (underlining omitted).

[3] The trial court made seventeen additional findings of fact regarding Child's best interests and DCS's adoption plan for Child due to the vast improvements Child has made with both behavior and anxiety in her pre-adoptive placement. Based upon the findings of fact, the trial court concluded that DCS had met its burden of proving by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in Child's removal and continued placement outside the home will not be remedied by Father; (2) there is a reasonable probability that continuation of the parent-child relationship between Father and Child poses a threat to Child's well-being; (3) termination of the parent-child relationship between Father and Child is in Child's best interests; and (4) DCS has a satisfactory plan for Child's care and treatment, which is adoption. *Id*. at 11; *see also* Ind. Code § 31-35-2-4(b)(2)(B) (listing

elements that DCS must prove in termination proceeding); Ind. Code § 31-37-
14-2 (specifying burden of proof). Accordingly, the trial court determined that
DCS had proven the allegations of the petition to terminate and therefore
terminated Father's parental rights. Father now appeals.

# Discussion and Decision

## Section 1 – We exercise our discretion to consider the merits of this appeal despite Father's untimely notice of appeal.

[4] Father begins by conceding that his notice of appeal was untimely filed.
Acknowledging that the State has never filed a motion to dismiss, Father simply
anticipates that the State will seek dismissal in its appellee's brief and urges us
to deny that request. The State does not seek dismissal.[3] As timeliness of the
notice of appeal is not a jurisdictional issue, and the State does not otherwise
raise the issue, we exercise our discretion and turn to the merits of the appeal.
*See In re O.R.*, 16 N.E.3d 965, 971 (Ind. 2014) (noting that "[a]lthough a party
forfeits its right to appeal based on an untimely filing of the Notice of Appeal,
this untimely filing is not a jurisdictional defect depriving the appellate courts of
authority to entertain the appeal" and also noting that in cases involving the
parent-child relationship "it is this unique confluence of a fundamental liberty
interest along with 'one of the most valued relationships in our culture' that has
often influenced this Court as well as our Court of Appeals to decide cases on

---

[3] Instead, the State concedes that, due to no fault of Father, appellate counsel was not appointed until after
the deadline for filing the notice of appeal had passed. Appellee's Br. n.4 at 8.

their merits rather than dismissing them on procedural grounds.") (citation omitted).

## Section 2 – Any error in the admission of evidence was harmless; Father has waived his challenge to the court's termination of his parental rights by failing to make a cogent argument.

[5] Before addressing Father's claim that the trial court erred in terminating his parental rights, we must note as a general matter that "[t]he purpose of terminating parental rights is not to punish the parents but, instead, to protect their children. Thus, although parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008) (citation omitted). "[T]ermination is intended as a last resort, available only when all other reasonable efforts have failed." *Id.*

[6] "We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id.* at 92-93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

[7]     Father's sole contention is that the trial court abused its discretion in taking judicial notice of and admitting evidence of some of his criminal history during the termination proceedings. The admission of evidence is left to the sound discretion of the trial court, and we will not reverse that decision unless the court's decision is against the logic and effect of the facts and circumstances before it. *In re A.H.*, 832 N.E.2d 563, 567 (Ind. Ct. App. 2005). Moreover, not all trial court error is reversible. *Matter of L.S.*, 125 N.E.3d 628, 633 (Ind. Ct. App. 2019). "The improper admission of evidence is harmless error when the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the judgment." *Id*. (citation omitted).

[8]     Here, we need not even discuss Father's evidentiary allegation of error, as we have little difficulty determining that any error was harmless at most. Indeed, Father admittedly challenges only two of the trial court's extensive findings of fact (findings C(1) and C(2)). *See* Reply Br. at 4. Father challenges none of the remaining fifty-five findings of fact supporting the trial court's termination of his parental rights. Accordingly, those findings stand as proven. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012). The trial court's termination order is supported by substantial unchallenged evidence, much of which we referenced in our facts and procedural history section, to satisfy us

that there is no substantial likelihood that the questioned evidence contributed to the judgment.

[9] Moreover, Father's entire remaining argument comprises a single statement, without relevant citation to the record or to legal authority, that the "remaining findings … on their own are not enough to support the conclusion that Father's parental rights should be terminated." Appellant's Br. at 12. This is wholly inadequate to establish reversible error, and therefore his challenge to the trial court's termination of his parental rights is waived for failure to make a cogent argument.[4] *See* Ind. Appellate Rule 48(A)(8)(a) (issue must be supported by cogent argument, including citations to the record and relevant case law); *see also In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) ( "To the extent that Mother argues that the trial court's findings or conclusions are clearly erroneous, Mother has waived this issue by failing to make a cogent argument."), *trans. denied*. The trial court's order terminating Father's parental rights is affirmed.

[10] Affirmed.

Robb, J., and Brown, J., concur.

---

[4] In response to the State's allegation of waiver, Father claims in his reply brief that he specifically argued in his principal brief "that the trial court failed to show that termination was in the best interest of the child." Reply Br. at 4. However, neither "best interest" nor any remotely related phrase appears anywhere in Father's principal brief.